J. P. TAYLOR v. FIRST NATIONAL BANK OF SNOW HILL ET ALS.

(Filed 30 September, 1925.)

**Bills and Notes—Payment—Intent—Evidence—Questions for Jury—Nonsuit.**

> Where the evidence is conflicting as to the intent of the parties to include a mortgage note in one given in a larger transaction, releasing the mortgage security, the question is one for the determination of the jury, and defendant's motion as of nonsuit thereon is erroneously granted.

APPEAL by plaintiff from *Barnhill, J.,* at February Term, 1925, of GREENE. Reversed.

*Langston, Allen & Taylor for plaintiff.*
*J. Paul Frizzelle for defendant.*

CLARKSON, J. (1) On 18 September, 1918, B. W. Pate and wife executed and delivered to plaintiff, J. P. Taylor, a note for $7,000 balance of purchase money on land and secured same by a mortgage made on the land. This mortgage was filed for registration on 17 April, 1920 and recorded in the register of deeds office for Greene County, N. C., in Book 125, p. 452.

(2) On 24 March, 1919, B. W. Pate and wife executed and delivered a note, and secured same by a mortgage on the same land, to H. F. Edwards, administrator, for $1,541.16. This mortgage was filed for registration and recorded on 25 March, 1919, in the register of deeds office for Greene County, N. C., in Book 116, p. 289.

(3) The First National Bank of Snow Hill, the defendant in this action, on 7 April, 1919, purchased the H. F. Edwards, administrator, note, secured by mortgage before mentioned, paying him the sum of $1,636.70.

(4) On 20 December, 1920, B. W. Pate, who was indebted to the said defendant, the First National Bank of Snow Hill, in certain amounts, to secure said indebtedness of $3,364.13, made two notes secured by deed in trust, (his wife joining in) one for the Edwards debt including interest $1,710.16, and the other the unsecured bank debt for the sum of $3,364.13. This deed in trust was immediately filed for record in the office of the register of deeds for Greene County and recorded in Book 131, p. 204.

To the above facts the parties are agreed, but on the record plaintiff contends that certain facts and circumstances show a settlement between the parties of the Edwards debt. That the bank took a deed in trust from B. W. Pate and wife and included in it a note for $1,710.16, the

Edwards debt, secured by prior mortgage, and delivered the prior mortgage to the mortgagor. That the bank record cash journal of 21 December, 1920, is as follows:

"No. 3920—$1,636.70 and 5994 shows the new note from same party— from Mr. B. W. Pate—$1,710.16. The cashier, at the time, of the defendant bank, testified, in part:

"The bank records offered in evidence show the Edwards note paid at $1,636.70 and show a new note given by B. W. Pate and put in record of that date as a bill receivable. Our records show the old note paid and a new loan of the same date to the party giving the renewal. In taking renewals, we retain the original note; we do not cancel the old note, but run it through the records in order to take the renewal into account.

"Q. If a person owed you a note maturing today and he went in and renewed it, how would you handle it? Answer: On the debit side of the journal as a loan made, and on the credit side as a loan paid."

There were other facts and circumstances substantiating plaintiff's contention.

On the other hand, defendant contends that the facts and circumstances show that there was no settlement as to the Edwards debt. That the note secured by the mortgage was never delivered to Pate the mortgagor. That Pate who made the note to Edwards, that defendant bank purchased, and who owed the debt testified:

"Q. Was there any agreement they would cancel and surrender that note to you? Answer: No, sir."

There were other facts and circumstances substantiating defendant's contention.

At the close of plaintiff's evidence, "defendant moved for judgment as of nonsuit and declared the First National Bank the holder of the first mortgage and the motion allowed," and the plaintiff duly excepted and assigned error.

We will treat the nonsuit merely as declaring that what is known as the "Edwards note and mortgage" a first lien. From the record we think the court below was in error in granting the nonsuit. The evidence was conflicting. The matter should have been left to the jury to determine the intention of the parties. *Joyner v. Stancill,* 108 N. C., 153; *Terry v. Robbins,* 128 N. C., 140; *Dawson v. Thigpen,* 137 N. C., 462; *Bank v. Knox,* 187 N. C., 565; *Saleeby v. Brown, ante,* 138.

In *Bank v. Hall,* 174 N. C., 477, *Brown, J.,* said: "It is well settled that a renewal note is not payment of the original indebtedness unless so intended. 7 Cyc., 877; *Kidder v. McIlhenny,* 81 N. C., 123; *Hyman v. Deverux,* 63 N. C., 624; *Wilkes v. Miller,* 156 N. C., 428."

In the present case, the note is retained by the bank and the mortgage surrendered to the mortgagor. Under the facts and circumstances of this case, the conflicting evidence should be passed on by a jury to determine what was the intention of the parties.

It is said in 1 Jones on Mortgages (6 ed.), sec. 926: "Whether a new note shall be treated and have effect between the parties as a payment of a former one for which it is submitted, will depend upon the purpose and understanding of the parties to the transaction; but not only will the intention of the parties be determined by the express agreement of the parties, but, in the absence of this, by the circumstances attending the transaction from which such intention may be inferred. . . . In the absence of any express agreement and of any circumstances showing intention, the renewal of the note does not affect the security. The burden is upon the mortgagor to show the existence of an agreement that the mortgage lien should be released upon the execution of the new note, and not upon the mortgagee to show an agreement that the mortgage should continue as a security for the debt covered by the new note." *Ibid.*, sec. 929. Again, "The taking of further security for the mortgage debt, whether it be by a second mortgage upon the same land, or real or personal security upon other property, is generally no waiver of the original mortgage." *Dawson v. Thigpen, supra,* p. 470.

19 R. C. L., part sec. 222:

"And the doctrine is well settled by authority in relation to mortgages that if the amount due thereon is paid, the intent of the parties in making the payment, whether to extinguish or keep alive the security, will ordinarily govern. As a general rule, a mere change in the form of the evidence of indebtedness will not operate to discharge a mortgage given to secure a debt, unless it is apparent that the parties so intended."

For the reasons given, the judgment below is

Reversed.